UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH AND IVA SAMOST,<br><br>    Plaintiffs / Counterclaim Defendants,<br><br>v.<br><br>PAULA LUBORSKY,<br><br>    Defendant / Counterclaim Plaintiff. | HONORABLE ROBERT B. KUGLER<br><br>CIVIL ACTION NO. 13-7365<br><br>**OPINION** |

**APPEARANCES**:

HAGNER & ZOHLMAN, LLC
By:  Thomas J. Hagner, Esq.
57 Kresson Road
Cherry Hill, New Jersey 08034
        Counsel for Plaintiffs / Counterclaim Defendants

HYLAND LEVIN LLP
By:  Peter J. Boyer, Esq.
6000 Sagemore Drive, Suite 6301
Marlton, New Jersey 08053
        Counsel for Defendant / Counterclaim Plaintiff

**KUGLER**, United States District Judge:

    Counterclaim Plaintiff Paula Luborsky asserts that Counterclaim Defendant Joseph Samost has failed to fulfill his obligations in a settlement agreement, which was embodied in various orders issued by this Court.  Luborsky asserts two claims: breach of contract (breach of the settlement agreement) and contempt of court.  On December 30, 2014, Senior United States District Judge Irenas granted summary judgment to Luborsky, as to

1

liability only, on the breach of contract claim. On March 24, 2016 the undersigned denied Samost's summary judgment motion as to damages. On June 13 and 14, 2016 the Court conducted a bench trial / civil contempt hearing on the remaining issues. Judgment in the amount of $66,000.00 on the breach of contract claim was entered in favor of Luborsky and against Samost on June 16, 2016.

This Opinion is now issued in accordance with Federal Rule of Civil Procedure 52(a)(1).[1] For the reasons stated herein, the Court finds Joseph Samost in contempt of court and awards Paula Luborsky her attorney fees and costs incurred in connection with litigating only the instant suit (Civil Action No. 13-7365).

## I.  FINDINGS OF FACT[2]

1. At all relevant times, Luborsky has owned the property, and lived in the house, located at 230 Flamingo Road, Marlton, New Jersey. (June 13, 2016 Trial Tr. p. 21-22) The lot is located on an island. Flamingo Road "cuts through the island and also bisects [Luborsky's] lot." (June 13, 2016 Trial Tr. p. 23, 94)

---

[1] "In any action tried on the facts without a jury . . . the court must find the facts specifically and state its conclusions of law separately. The findings may appear in an opinion or memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1).

[2] The Court only sets forth factual findings integral to the legal conclusions stated in Section III. For further factual context, see the undersigned's summary judgment opinion of March 24, 2016 (Docket Entry # 54), *Samost v. Luborsky*, 2016 U.S. Dist. LEXIS 38886 (D.N.J. Mar. 24, 2016).

2. Luborsky's property was adjacent to a lake created by the Upper Kenilworth Dam, but that dam washed away during a storm in July of 2004. (June 13, 2016 Trial Tr. p. 27, 37, 114, June 14, 2016 Trial Tr. p. 64) "[T]he upper lake disappeared because the dam was breached." (June 13, 2016 Trial Tr. p. 115)

3. Most of the windows in Luborsky's house faced the lake; multilevel decks and a patio also faced the lake. (Id. at p. 35, 60, 69)

4. At all relevant times, Joseph Samost, or his corporate entities, have owned the property surrounding Luborsky's property, including the Upper Kenilworth Dam, and Flamingo Road. (June 13, 2016 Trial Tr. p. 22)

5. An Order of this Court dated August 29, 2001 (entered on August 31, 2001), signed by Senior United States District Judge Irenas, states that Joseph Samost is responsible for the costs of maintaining the Kenilworth Lakes and dams and Flamingo Road. (TEx. D-2)  This Order remains in full force and effect.

6. An Order of this Court dated March 23, 2004, signed by Senior United States District Judge Irenas, states that Joseph Samost had not met his "obligations with respect to maintaining the Keniworth Lakes, dams and culverts as well as Flamingo Road." (Ex. D-3)  The Order further directed Joseph Samost to take specific steps to repair and maintain Flamingo Road, as well as

reconstruct the Kenilworth dams and dredge Kenilworth Lakes. (Id.) This Order remains in full force and effect.

    7.   An Order of this Court dated September 21, 2004, (i.e., after the July 2004 storm) signed by Senior United States District Judge Irenas, directs Joseph Samost to "construct a temporary roadway with culverts and such other materials necessary to allow emergency service, trash removal and all other vehicles to traverse Flamingo Road.  This is separate and apart from and in addition to all necessary permanent repairs and reconstruction of Flamingo Road, the Kenilworth Lakes and the dams, as set forth in the Court's March 23, 2004 Order." (Ex. D-4, p. 2)  This Order remains in full force and effect.

    8.   To date, the Upper Kenilworth Dam has not been reconstructed.  (June 13 Trial Tr. p. 117)  As a result, Luborsky's former lake-front property has had no lake since 2004.  The dry lake bed is overgrown with plant life. (Id. at p. 28, 113)

    9.   To date, Flamingo Road has not been properly maintained or repaired, such that municipal trash collection vehicles are unable to safely drive on it. (June 13, 2016 Trial Tr. p. 116, 137, 154)  As a result, Luborsky must deposit her trash for collection approximately four-tenths of a mile from her house. (June 13, 2016 Trial Tr. p. 33-34) Similarly, her daily newspaper cannot be delivered directly to her house. (Id. at p. 34-35)

10. Related New Jersey State Court litigation was initiated by the New Jersey Department of Environmental Protection against Joseph Samost and others in 2004. (June 13, 2016 Trial Tr. p. 118; June 14, 2016 Trial Tr. p. 47-48)

11. In 2010, the state court appointed a receiver, J. Llewellyn Mathews, to perform all obligations of Joseph Samost with respect to Kenilworth Lakes and dams and Flamingo Road. (June 13, 2016 Trial Tr. p. 43, 151; June 14, 2016 Trial Tr. p. 47-48; Exhibit D-12)

12. Luborsky's expert appraiser testified that Joseph Samost's failure to restore the Upper Kenilworth Dam and lake has reduced Luborsky's property value by $66,000.00 (June 13, 2016 Trial Tr., p. 75-76)

13. Samost did not offer any evidence concerning the diminution in value of Luborsky's property.

## II. CONCLUSIONS OF LAW

**A. Breach of Contract Claim**

Joseph Samost's liability on the breach of the settlement agreement claim was resolved in Luborsky's favor by Order dated December 30, 2014, signed by Judge Irenas. Further, with respect to the measure of damages on the successful claim, Judge Irenas also ruled that "[c]ompensation for Luborsky's 'loss of use and enjoyment of' the subject property may be allowed if the relevant

dam is constructed prior to the resolution of this suit. Otherwise, the Court shall treat that issue as subsumed by the issue of the property's diminution in value." (Order of February 24, 2015, Docket #27); *see also* June 13, 2016 Trial Tr. p. 16 ("THE COURT: [Luborsky] can't recover emotional distress damages on a contract claim. It's simple.").

As the undersigned explained after the close of evidence at the trial (see June 14, 2016 Trial Tr., p. 97-98), the uncontradicted and credible trial evidence demonstrates that Luborsky's property is worth $66,000.00 less as a result of Joseph Samost's breach of the settlement agreement. The Court therefore finds, by a preponderance of the evidence, that Luborsky has suffered $66,000.00 in compensatory damages.

**B.  Civil Contempt**

   **(1) Liability**

"To show civil contempt, a plaintiff must establish the following: (1) that a valid court order existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990)(internal citation and quotation omitted). The burden of proof is clear and convincing evidence. *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994). "[W]illfulness is not a necessary element of civil contempt," accordingly, "evidence . .

6

. regarding . . . good faith does not bar the conclusion . . . that [the defendant] acted in contempt." *Id.*

Samost has never contested that the relevant court orders are valid and that he knew about them.

Moreover, the Court finds that the evidence presented at trial establishes by clear and convincing evidence that Joseph Samost disobeyed the relevant orders by: (1) failing to fully maintain, restore or reconstruct Flamingo Road; and (2) failing to reconstruct Upper Kenilworth Dam such that the resulting lake would be restored.

Samost's asserted defenses to this finding of contempt are unavailing.

First, Samost argues that Luborsky's contempt claim is precluded by Judge Irenas' previous order in the case which resulted in the settlement at issue, civil action 99-3035, i.e., "the [Joseph] Samost v. [Stephen] Samost litigation." (June 13, 2016 Trial Tr. p. 21)  The order, dated July 10, 2007, dismissed without prejudice Luborsky's motion for contempt[3], and states that Luborsky is "granted leave to renew [her] contempt motion once the related issues in the state court litigation . . . have been resolved." (Civil Action No. 99-3035, Docket #95)

---

[3] By 2007, Joseph Samost had been under an obligation to repair the dam / restore the lake, and repair and maintain Flamingo Road for six years.

7

Samost reasons that since the state court litigation has not been resolved, Judge Irenas' 2007 Order precludes Luborsky's instant contempt claim.

The Court disagrees. Samost interprets the 2007 order far too broadly. The order speaks of *renewing*, in the 99-3035 suit, Luborsky's *motion* for contempt.[4] Luborsky has not violated that order by filing, approximately six years later, a *counterclaim* for contempt in a separate lawsuit initiated by Samost. The 2007 order does not preclude Luborsky's contempt counterclaim.

Second, Samost seems to assert an impossibility defense. He argues that he cannot repair, reconstruct or maintain the Upper Kenilworth Dam or Flamingo Road because a receiver has been appointed by the state court to accomplish those tasks. However, even assuming *arguendo* that Samost *no longer* has the ability comply with his obligations under the settlement agreement and court orders (a questionable proposition as a matter of both fact[5]

---

[4] Counsel for Samost, Mr. Hagner, stated precisely this during the trial: "Judge Irenas' order basically says you can come back *under this docket number* once the state court is over, *come back under this docket number* and you can *refile* your *motion* for contempt." (June 13, 2016 Trial Tr. p. 17)(emphasis added).

[5] Samost's own counsel elicited during Luborsky's cross-examination that Samost paid for repairs of the Lower Kenilworth Dam, which was also subject to the receivership, during the pendency of the receivership. (June 13, 2016 Trial Tr. p. 45)  Stephen Samost also testified that Joseph Samost contracted with engineers or contractors to repair the Lower Kenilworth Dam during the pendency of the receivership. (Id at p. 150)

and law[6]), the receiver was appointed in 2010. The relevant Orders date back to 2001. This asserted defense does nothing to excuse Samost's noncompliance during the many years prior to the receiver's appointment-- a receiver who was appointed precisely because Samost had continually failed to reconstruct and maintain the Upper Kenilworth Dam and Flamingo Road. (June 13, 2016 Trial Tr. p. 151-52)

The Court holds Joseph Samost in contempt of Judge Irenas' orders of August 29, 2001; March 23, 2004; and September 21, 2004.

**(2) Remedy**

The district court has "'wide discretion in fashioning a remedy'" for civil contempt. *Robin Woods Inc.*, 28 F.3d at 399. (quoting D*elaware Valley Citizens' Council v. Pennsylvania*, 678 F.2d 470, 478 (3d Cir. 1982)).

Luborsky seeks (1) "compensatory damages to compensate [her] for the losses sustained as a result of Joseph Samost's contempt;"

---

Additionally, while the receiver testified that he believed he had "exclusive contracting authority" with regard to the repair and reconstruction of Upper Kenilworth Dam and Flamingo Road, he also testified that Joseph Samost remained financially responsible to pay for the repairs and reconstruction. (June 14, 2016 Trial Tr. p. 51, 53-54)

[6] "THE COURT: Do you have a case citation that says that the appointment of a receiver in these circumstances divests the [property owner] of the authority to act? MR. HAGNER: To me it's self-evident. I'm sorry." (June 13, 2016 Trial Tr. p. 162)

(2) "legal fees and costs incurred on behalf of Paula Luborsky in seeking to secure compliance with this Court's Orders and enforcement of the settlement." (Luborsky's Post-Trial Brief, Docket #93, p. 4); and (3) "a specific determination that, in complying with the Orders of this Court, Joseph Samost may not intrude upon [Luborsky's] property." (Id. at p. 11)[7]

As to the first category (compensatory damages), Luborsky specifically seeks compensation for loss of use and enjoyment of her property.  While the Court agrees that Judge Irenas' ruling concerning use and enjoyment damages with regard the breach of contract claim does not preclude an award for such damages on the civil contempt claim, the undersigned nonetheless declines to award such damages.

Luborsky provided no evidence, independent of her property's diminution in value, that even attempts to place a monetary value on loss of use and enjoyment.  Her testimony was simply that she used the lake for "[s]wimming. We have a canoe.  We would have family gatherings . . . utilizing the lake. You know, scenically, aesthetically. . . . The kids liked to be on the beach, wading, tubing.  Having your friends over enjoying the lake with them, as I said aesthetically." (June 13, 2016 Trial Tr. 25)  Similarly,

---

[7] Luborsky previously sought punitive damages as well.  She has since abandoned that claim.

10

Luborsky identified pictures she had taken prior to 2004 that "just [depicted] the beauty of the lake." (Id. at p. 27)

Luborsky has provided no evidentiary basis for awarding money damages for loss of use and enjoyment, thus any amount the Court might award would be based on pure speculation.  The Court declines to award compensatory damages for Luborsky's loss of use and enjoyment of her property.

As to the second category (legal fees and costs), there are three subcategories.  Luborsky seeks compensation for fees incurred in connection with: (a) the previous contempt motion filed in 99-3035; (b) the related state court litigation; and (c) the instant suit.  For the reasons that follow, the Court will award compensation only for fees and costs incurred in the instant suit.

As to the first subcategory, the Court notes that the contempt motion for which Luborsky seeks compensation was filed by Stephen Samost, representing himself *pro se*. (June 13, 2016 Trial Tr. p. 118)  According to the Court's records, Luborsky was at the time-- and still today-- represented by Mr. Boyer.  Luborsky does not explain what fees *she* incurred in connection with a motion filed not by her attorney, but rather Stephen Samost, Luborsky's co-defendant (and husband).  Indeed, Court records indicate that Mr. Boyer did not even appear at the multiple hearings on, and status conferences concerning, the contempt motion; the only

person who ever appeared for the defense was Stephen Samost. (Docket 99-3035, entries 65, 66, 69, 70, 73, 74, 82, 83, 84, 86, 88 and 94)

Further, the contempt motion was never decided in Stephen Samost's favor; it was dismissed without prejudice with leave to refile. (June 13, 2016 Trial Tr. p. 118)

For all of these reasons, the Court declines to exercise its discretion to award Luborsky attorney fees and costs associated with the contempt motion filed in case 99-3035.

As to the second subcategory, there is insufficient evidence to support the claim for damages.  Vague assertions that Luborsky sought to enforce this Court's orders in the related state court litigation do not sustain her burden of proof.  Luborsky has not identified any specific pleading or motion she filed, or otherwise explained how she went about enforcing *this Court's* orders in the state court litigation.  She merely testified, "I have gone back to [state] court on multiple occasions and we have received orders that indicate that Joe Samost is responsible for the repair and maintenance of the dame and the road."  (June 13, 2016 Trial Tr. p. 36)

Stephen Samost also identified various orders issued by the state court that require Joseph Samost to take actions with respect to the property at issue, but his testimony, like Luborsky's, fails to explain how those state court orders relate

12

to the federal court orders at issue here-- other than to say he went to pursue relief in the state court after Judge Irenas dismissed without prejudice in 2007, the contempt motion. (June 13, 2016 Trial Tr. p. 119, 130)

Perhaps more to the point, Luborsky has not identified the legal basis for the state court "enforcing" any order issued by this Court.  Counsel's argument at trial seemed to imply that Judge Irenas intended his orders to be enforced in state court when he dismissed without prejudice in 2007 the contempt motion in 99-3035. (July 13, 2016 Trial Tr. p. 128-29)  The undersigned does not draw that inference from the evidence.  It is equally-- if not more-- likely, that Judge Irenas anticipated that actions taken by the state court in the state court litigation would moot, not enforce, his previous orders.

Moreover, attempting to parse, many years after the fact, Luborsky's attempts to enforce this Court's orders from her attempts to obtain and enforce state court orders that appear to provide overlapping relief with the federal court orders (see June 13, 2016 Trial Tr. p. 119-125, 132-33, 141-42), would be practically impossible to do.

For all of these reasons, the Court, in its wide discretion in fashioning a contempt remedy, declines to award Luborsky state court fees and costs.

13

The Court will, however, award Luborsky attorneys fees and costs, as well as expert fees, that she incurred in connection with her successful counterclaims for breach of contract and contempt of court in this suit.  Such fees and costs are a direct result of Joseph Samost's noncompliance with Judge Irenas's orders, and will therefore compensate her for concrete financial losses above and beyond the diminution in her property's value.

Lastly, Luborsky "seeks a specific determination" that Joseph Samost may not intrude upon her property in connection with reconstructing the Upper Kenilworth Dam or Flamingo Road. (Post-Trial Brief p. 11)

As an initial matter, this Court does not provide relief in the form of "determinations."  The Court may award money damages, issue injunctions, and when properly asserted in a pleading (as opposed to a post-trial brief), issue declaratory relief, among other things.  But determinations or pronouncements are not remedies this Court provides.

Moreover, in denying Samost's previous Motion to Enforce Litigant's Rights, the undersigned has already stated that Samost has identified no source of a right to enter onto Luborsky's property.  That issue has been decided.

Accordingly, the Court declines to issue, as a sanction for Joseph Samost's contempt, any further "determination" regarding Joseph Samost's alleged need to enter onto Luborsky's property at

14

some unspecified time in the future to fulfill his obligations under this Court's orders.

### III.

For the reasons set forth above, the Court has awarded Luborsky compensatory damages on the breach of contract counterclaim in the form of a $66,000.00 judgment entered on June 16, 2016.

The Court further holds Joseph Samost in civil contempt of this Court's orders dated August 29, 2001; March 23, 2004; and September 21, 2004, and as a contempt sanction, awards Luborsky compensatory damages in the form of her attorneys fees, expert fees, and costs incurred in connection with litigating her counterclaims in this action.  An appropriate Order accompanies this Opinion.


Dated:   August 2, 2016

                                         ___s/ Robert B. Kugler____
                                         **Robert B. Kugler, U.S.D.J.**